**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SUNNY FLORIDA DAIRY, a Florida corporation,

    Plaintiff,

v.                                                        Case No.

BURRIS LOGISTICS, INC., a Delaware
Corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiffs, Sunny Florida Dairy, Inc. ("Plaintiff") hereby sue Burris Logistics, Inc. ("Defendant") and alleges:

### A. PRELIMINARY ALLEGATIONS

1. Plaintiff is a Florida corporation, sui juris, organized under the laws of the State of Florida, with a principal place of business in the State of Florida and is a citizen of the State of Florida.

2. Burris is a Delaware corporation, sui juris, organized under the laws of the State of Delaware, with its principal place of business located in Delaware, and is a citizen of the State of Delaware.

3. As to each cause of action set forth in this complaint (this "Complaint"), this is an action wherein the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

4. Pursuant to Title 28 of the United States Code §§ 1332(a)(1), 2201, and other applicable law, jurisdiction over this cause exists.

5. With respect to each cause of action set forth in this Complaint, this is an action for declaratory relief and production of documents pursuant to certain events, circumstances, conditions, and agreements by a citizen of the State of Florida relating to the manufacture, sale, and delivery of goods within the State of Florida to a company that resides in the State of Florida.

6. Pursuant to Title 28 of the United States Code § 1391(b)(2), venue is proper in the Middle District of Florida.

7. With respect to each count set forth in this Complaint, all requirements, and conditions precedent to the bringing of this action have been satisfied, performed, or waived.  The causes of action set forth in this Complaint are pled in the alternative where applicable.

8. With respect to each cause of action set forth in this Complaint, the subject claims, as hereafter alleged, have required the Plaintiff to retain the undersigned law firm as counsel of record herein, for the purpose of initiating and prosecuting this cause.  The Plaintiff has agreed to compensate its counsel for services rendered and reimburse them for costs incurred in connection with the enforcement of the Plaintiff's rights and remedies as more fully set forth below.  Pursuant to applicable law, the Defendant may additionally be obligated to reimburse the Plaintiff for attorneys' fees and costs incurred by the Plaintiffs in connection herewith.

## B. BACKGROUND ALLEGATIONS

9. Plaintiff is a distribution company with its principal place of business in Tampa, Florida.

10. Plaintiff and its affiliates distribute dairy and other related food and beverage products within the State of Florida.

11. Generally, the Plaintiff and Defendant engaged in a series of transactions for the sale of goods by the Defendant to the Plaintiff.

12. Prior to engaging in business with Defendant, Plaintiff purchased food and beverage products manufactured by Nestle ("Nestle Products") directly from Nestle and the products were provided to Plaintiff at a warehouse facility owned by Defendant located in Orlando, Florida (the "Defendant Facility").

13. During the period that Plaintiff purchased the Nestle Products directly from Nestle for delivery at the Defendant Facility, Plaintiff and Nestle often had problems with Defendant accounting for the Nestle Products that it warehoused and delivered for Nestle at the Defendant Facility.

14. In approximately November 2019, Defendant began purchasing the Nestle Products from Nestle and Plaintiff began ordering the Nestle Products from Defendant.

15. The last direct purchase from Defendant was on February 18, 2021 (the "Termination Date"). The period from when Plaintiff began purchasing the Nestle Products from Defendant through the Termination Date is referred to herein as the "Relevant Period."

16. During the Relevant Period, Plaintiff placed its orders of the Nestle Products to Defendant to be picked up at Defendant Facility in Orlando, Florida.

17. During the Relevant Period, Plaintiff took delivery of the Nestle Products at the Defendant Facility in Orlando, Florida.

18. During the Relevant Period, after Plaintiff took delivery of the Nestle Products, Defendant invoiced Plaintiff for the Nestle Products that it claimed to have delivered to Plaintiff in fulfillment of Plaintiff's order.

19. There were two principal problems that plagued the Defendant's delivery and invoicing of the Nestle Products during the Relevant Period.

20. The first problem was that the Defendant picked the wrong product and placed it on the Plaintiff's trucks ("Mispicking").

21. By way of example, but not limitation, the Plaintiff would order pepperoni pizzas, the Defendant would instead pick and load mushroom pizzas on Plaintiff's trucks, which the Plaintiff could not sell and had to dump because, due to food safety requirements, the mispicked products could not be returned to Defendant Facility and provided to whomever actually ordered the mispicked products from the Defendant.

22. As another example, but without limitation, the Plaintiff would order a product in bulk pack, but the Defendant would load the product in family pack, which the Plaintiff could not sell and had to dump because, due to food safety requirements, the products could not be returned to Defendant Facility and provided to whomever actually ordered the mispicked products from the Defendant.

23. Because the mispicked products were loaded onto Plaintiff's trucks, Plaintiff would not discover that Defendant had loaded mispicked products that it did not order and had no ability to sell until after the products had been received at Plaintiff's warehouse upon selecting for distribution.

24. During the Relevant Period, the Plaintiff deducted the amounts that were charged for the mispicked products from the payment for the invoice containing charges for mispicked products and notified the Defendant of the deduction for mispicked products at or before the time that Plaintiff paid for the invoices that contained the mispicked products.

25. Defendant never questioned or objected to Plaintiff deducting amounts from invoices due to mispicked products when it had delivered mispicked products to the Plaintiff.

26. The second problem was that the invoices provided by the Defendant often included products that were not delivered to the Plaintiff either by invoicing for greater quantities of product than the Defendant delivered to Plaintiff or by invoicing for product that was ordered but not delivered at all ("Short Orders").

27. By way of example, but not limitation, on one occasion, the Defendant invoiced Plaintiff in the amount of $51,643.81 for product that it had never delivered to Plaintiff, and when Plaintiff raised the issue with the Defendant, the Defendant could not provide any records of providing the products to the Plaintiff and acknowledged that it had simply invoiced the Plaintiff for products that Plaintiff had not ordered and that Defendant had not delivered and applied a credit for the payment of the invoice.

28. The Defendant never objected or complained about Plaintiff deducting the amounts that it had invoiced for product that was not delivered from its payment for the invoice during the Relevant Period.

29. Thus, the Plaintiff and Defendant's course of dealing throughout the Relevant Period was that the Defendant attempted to charge Plaintiff for mispicked products that Plaintiff had to dump and attempted to charge Plaintiff for goods that it never delivered to Plaintiff and Plaintiff would deduct those charges from the invoices when it paid the invoices to Defendant, who likewise never objected or complained of the Plaintiff's practice of deducting the charges for Mispicking or Short Orders from payment.

30. In addition to the two principal problems identified above, when Plaintiff would inquire as to which invoices or which goods Defendant applied payments, Defendant could not inform Plaintiff what invoices or goods the payments were applied to.

31. In approximately October of 2020, due to the Defendant's pervasive Mispicking and Short Orders, Plaintiff quit using Defendant as the primary provider of Nestle Products and only ordered product from Defendant when it could not obtain all of the Nestle Products it needed directly from Nestle.

32. Prior to the Termination Date, Defendant did not object to, or complain about, any of the amounts that Plaintiff had deducted from Defendants invoices for due to Mispicking or Short Orders.

33. Recently, Defendant has demanded payment for invoices from the Relevant Period and Plaintiff has repeatedly informed Defendant that in making its demand, it is attempting to charge Plaintiff for mispicked products and Short Orders, and long after the time that Plaintiff deducted payment from the invoices that overcharged for mispicked products and short orders.

34. Plaintiff has repeatedly requested backup documentation for the product reflected in the invoices that Defendant claims to have provided Plaintiff in the invoices, however, Defendant has failed to provide any documents to back up the charges on the invoices.

35. The Plaintiff has repeatedly requested proof of delivery of the goods that Defendant claims to have sold and delivered to Plaintiff, however, Defendant has failed to provide any documents showing proof of delivery.

36. To be clear, at no time during the Relevant Period did Defendant object to the Plaintiff's course of performance with respect to Defendant's overcharges for Mispicking or Short Orders.

37. At no time during the Relevant Period, did Defendant complain that Plaintiff failed to pay for the products sold and delivered to Plaintiff.

38. On or about August 6, 2021, Defendant demanded payment in the amount of $269,426.13, without providing any evidence whatsoever that payment in that amount is due from Plaintiff.

## COUNT I: DECLARATORY RELIEF

39. This is an action for declaratory relief.

40. This Court has jurisdiction to enter a declaratory judgment pursuant to 28 U.S.C. §2201, including an action to determine any obligation due and owing to Defendant from Plaintiff and whether Defendant provided the goods that it now demands payment for to the Plaintiff.

41. The Plaintiff reincorporates by reference the allegations contained in paragraphs 1 through 40 above as though fully set forth herein.

42. The circumstances under which Defendant routinely charged for products that it did not deliver, Defendant's failure to object to payment of less than the claimed due on its invoices and delay in alleging that Plaintiff owes it $269,426.13 creates a doubt as to the validity of the charges claimed due as well as the underlying transactions.

43. Plaintiff contends that the Defendant cannot charge Plaintiff for products that Defendant did not deliver to Plaintiff.

44. Defendant contends that it can charge Plaintiff for products that it did not deliver to Plaintiff.

45. Plaintiff contends that it was not required to pay for products that the Defendant mispicked and that Plaintiff was required to dump because Plaintiff could not sell the products and could not return the products to the Defendant.

46. Defendant contends that Plaintiff is required to pay for products that Plaintiff did not order from Defendant but that Defendant mispicked and placed on Plaintiff's trucks that Plaintiff had to dump because it could not sell the mispicked products.

47. Plaintiff contends that the parties had established a course of dealing with respect to the Defendant's attempts to charge Plaintiff for products it never delivered to Plaintiff and with regard to Defendant attempting to charge Plaintiff for mispicked products that Plaintiff did not order and had to dump because it could not sell the products to its customers or return the products to the Defendant.

48. Plaintiff has reviewed its records with respect to the Defendant's demands for payment and cannot reconcile the amounts that Plaintiff owed with the amounts Defendant now claims due.

49. There is a bona fide, actual, present, practical need for a declaration of the Plaintiff's rights vis-à-vis the Defendant in connection with the Defendant's attempt to overcharge Plaintiff for mispicked products and short orders and what, if any, charges are due for products Defendant properly provided to Plaintiff.

50. The requested declaration deals with present or an ascertainable set of facts or present controversy.

51. The present controversy is an actual and substantial controversy between parties having adverse legal interest and there is sufficient immediacy and reality warranting the issuance of a declaratory judgment.

52. The relief sought is not merely the seeking of an advisory opinion.

WHEREFORE, the Plaintiffs requests a declaratory judgment in their favor declaring that that it has paid for all products ordered and delivered, or in the alternative determining what goods it ordered and defendant provided that have not been paid for by the Plaintiff, that it has properly performed pursuant to the parties' course of performance, and the Plaintiffs have no further obligation to the Defendants.

## COUNT II:  BILL OF DISCOVERY

53. This is an action for discovery against the Defendants as to the alleged sale of products by the Defendant to the Plaintiff, and the transactions underlying them.

54. The Plaintiffs reincorporate by reference the allegations contained in paragraphs 1 through 40 above as though fully set forth herein.

55. The Plaintiffs have a right to documents and communications in the custody and/or control of the Defendants which relate to the alleged sale of products to the Plaintiff by the Defendants and the transactions underlying the same during the Relevant Period.

56. The discovery relates to Plaintiffs' claims against the Defendants arising from Defendant's alleged sale of goods to Plaintiff during the Relevant Period that the Defendant did not provide to Plaintiff and did not complain about until March 2021, and the transactions underlying the same.

57. The requested discovery is material and necessary to the rights of the Plaintiff vis-à-vis the Defendant in relation to the alleged sale of goods by the Defendant to the Plaintiff and

amounts allegedly due and owing for products alleged ordered by Plaintiff and delivered by Defendant and the transactions underlying the same.

58. The Plaintiffs have sought said discovery informally by requesting backups and proof of delivery of the goods allegedly sold to Plaintiff from the Defendant for the charges that the Defendant is attempting to charge Plaintiff but have been rebuffed by the Defendants in connection with these requests.

WHEREFORE, the Plaintiff requests regarding Defendant's backup for the charges that it is now attempting to collect from Plaintiff, evidence of proof of delivery of the products that it claims to have delivered to Plaintiff, and Defendant's history of delivering mispicked products and short orders to other distributors during the relevant period such that it can determine whether there is any genuine dispute as to whether the Plaintiff has failed to pay for products that it ordered from the Defendant and that Defendant delivered to the Plaintiff.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated this August 13, 2021.

/s/ Townsend J. Belt
**TOWNSEND J. BELT, ESQUIRE**
Florida Bar No. 0066811
tbelt@anthonyandpartners.com
**ANTHONY & PARTNERS, LLC**
100 South Ashley Drive, Suite 1600
Tampa, Florida 33602
Telephone: 813/273-5616
Telecopier: 813/221-4113
Attorneys for the Plaintiff